## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

NEW FRONTIER MEDIA, INC., a Colorado
Corporation,                                    :
                                                :
                Plaintiff,                      :
                                                :
        -against-                               :
                                                :   Civil Action No. 1:12-CV-01417
ADAM ROTHSTEIN, ERIC DOCTOROW,                  :
MAHOMED KHALIK ISMAIL SHERRIF,                  :
WILLEM DEON NEL, BARBARA WALL,                  :
MARCEL GOLDING, LONGKLOOF                       :
LIMITED,                                        :
MILE END LIMITED, SABIDO                        :
INVESTMENTS,                                    :
HOSKEN CONSOLIDATED INVESTMENTS                 :
LIMITED,                                        :
                                                :
                Defendants.                     :
_____         :
                                                :
LONGKLOOF LIMITED,                              :
MILE END LIMITED, ERIC DOCTOROW,                :
MAHOMED KHALIK ISMAIL SHERRIF,                  :
WILLEM DOEN NEL, BARBARA WALL                   :
                                                :
                Counterclaimants               :
                                                :
        -against-                               :
                                                :
NEW FRONTIER MEDIA, INC. ALAN                   :
ISAACMAN, WALTER TIMOSHENKO,                    :
MELISSA HUBBARD, HIRAM WOO,                     :
MICHAEL WEINER, DAVID NICHOLAS                  :
                                                :
                Counterclaim-Defendants         :

---

## ANSWER AND COUNTERCLAIM FOR
## DECLARATORY AND INJUNCTIVE RELIEF

---

Defendants, by their undersigned counsel, Stroock & Stroock & Lavan LLP and Davis

Graham & Stubbs LLP, for their answer to the Complaint and for their Counterclaims respond and allege as follows:

## ANSWER

1.      Defendants deny the allegations contained in Paragraph 1 of the Complaint except Defendants admit that Paragraph 1 is how plaintiff characterizes its action.

2.      Defendants deny the allegations contained in the first sentence of Paragraph 2 of the Complaint except that the Special Committee purports to be conducting a review of strategic alternatives for the Corporation.  Defendants admit the allegations contained in the second sentence of Paragraph 2 of the Complaint.  Defendants deny the allegations contained in the third sentence of Paragraph 2 of the Complaint.

3.      Defendants deny the allegations contained in the first sentence of Paragraph 3 of the Complaint.  Defendants deny the allegations contained in the second sentence of Paragraph 3 of the Complaint, except that Longkloof declined to enter into a confidentiality agreement that was conditioned upon Longkloof agreeing to a standstill provision that would have (a) limited its ability to take actions that it believes would be in the interests of all shareholders of the Corporation and (b) stymied its publicly stated intention to seek control of the Corporation, either through an acquisition in an all cash transaction representing a substantial premium to the unaffected stock price for all shareholders or a proxy contest to replace four of the six current directors of the Corporation.  Defendants deny the allegations contained in the third and fourth sentences of Paragraph 3 of the Complaint.  With respect to the fifth sentence of Paragraph 3 of the Complaint, deny the allegations to the extent that they are inconsistent with the express language of Longkloof's filing on Amendments Nos. 1 through 4 taken in their entirety. Defendants deny the allegations contained in the sixth sentence of Paragraph 3 of the Complaint.

Defendants deny the allegations contained in the seventh sentence of Paragraph 3 of the Complaint except that Longkloof nominated a slate of persons to be elected to the Corporation's board of directors. Defendants deny the allegations contained in the eighth sentence of Paragraph 3 of the Complaint. Defendants deny the allegations contained in the ninth sentence of Paragraph 3 of the Complaint. Defendants admit, upon information and belief, that Exhibit A contains the bylaws of the Corporation.

4.     The first sentence of Paragraph 4 of the Complaint is argument to which no response is required. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 4 of the Complaint except that Plaintiff purports to bring this action pursuant to the statutes referred to in that sentence.

5.     Defendants deny the allegations contained in the first sentence of Paragraph 5 of the Complaint. The remaining sentences of Paragraph 5 of the Complaint are legal arguments to which no response is required.

6.     Defendants deny the allegations contained in Paragraphs 6 and 7 of the Complaint.

7.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

8.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint.

9.     Defendants admit the allegations contained in Paragraph 10 of the Complaint except aver that the trading price of $1.71 for shares of the Corporation is a direct result of the offer Longkloof made to acquire all of the shares of the Corporation that it does not beneficially

own at a price of $1.75 per share, and the expectation that that offer will be made available to shareholders.

10.      Defendants deny the allegations contained in Paragraph 11 of the Complaint except that the address for Rothstein is correct and that he is a citizen and resident of Connecticut.

11.      Defendants admit the allegations contained in Paragraphs 12 through 20 of the Complaint.

12.      Defendants admit the allegations contained in Paragraphs 21 through 23 of the Complaint.

13.      Defendants deny the allegations contained in Paragraph 24 of the Complaint except that Plaintiff has, without basis, disputed the Defendants' compliance with § 13(d) of the Securities Exchange Act of 1934 and NFM's Advance Notice Bylaw.

14.      Defendants deny the allegations contained in Paragraph 25 of the Complaint.

15.      Defendants deny the allegations contained in Paragraph 26 of the Complaint except that Rothstein was formerly employed by Intana and deny the allegations contained in Paragraph 26 to the extent that they are inconsistent with the express language of Intana's filings on Schedule 13G taken in their entirety.

16.      Defendants deny the allegations contained in Paragraph 27 of the Complaint except that Rothstein was a friend of Weiner.

17.      Defendants deny the allegations contained in paragraph 28 of the Complaint except Defendants admit that Rothstein met with Isaacman and Weiner on January 29, 2012, during which he mentioned that he was a financial advisor to Longkloof and discussed a consensual acquisition of the Corporation in which, among other things, the Board would exempt

Longkloof's offer from the Corporation's Poison Pill.

18.     Defendants deny the allegations contained in Paragraph 28 of the Complaint except Defendants admit that on March 9, 2012, Longkloof sent a letter (the "March 9 Letter") to the Board, pursuant to which Longkloof made an offer to acquire all of the outstanding Shares not beneficially owned by Longkloof for $1.35 per Share in cash, subject to the terms and conditions specified in the March 9 Letter and deny the allegations contained in Paragraphs 28 to the extent that they are inconsistent with the express language of the March 9 Letter taken in its entirety.

19.     Defendants deny the allegations contained in paragraph 29 of the Complaint except Defendants admit that Rothstein had dinner with Weiner, "Taj", Stuart Duncan, Marc Callipari, Timoshenko and perhaps others in connection with the AVN Awards Show in Las Vegas.

20.     Defendants admit the allegations contained in paragraph 30 of the Complaint except Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation that HCI executives attended that presentation.

21.     Defendants admit the allegations contained in paragraphs 31 and 32 of the Complaint except aver that it was Isaacman who suggested that this was the advisable way to approach the Board, for among other reasons, so as not to compel the Corporation to have to publicly disclose the offer and deny the allegations contained in Paragraphs 31 and 32 to the extent that they are inconsistent with the express language of the February 15, 2012 Letter taken in its entirety.

22.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint except Defendants admit that,

on or about February 23, 2012, Rothstein telephoned Isaacman and left a message.

23.     Defendants deny knowledge or information to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint except Defendants admit that, on or about February 23, 2012, Rothstein telephoned Nicholas and left a message.

24.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint except Defendants admit that, on or about February 29, 2012, Rothstein telephoned Nicholas and had a discussion with him about, among other things, Longkloof's offer to buy the Corporation but Defendants deny that he commented that he or Longkloof expected the South African government to adjust its standards to allow distribution of adult content in that country.

25.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 36 and 37 of the Complaint.

26.     Defendants deny the allegations contained in paragraph 38 of the Complaint.

27.     Defendants deny the allegations contained in Paragraph 39 of the Complaint except Defendants admit that, on March 14, 2012, Longkloof and Mile End filed Amendment No. 4 to their Schedule 13D and deny the allegations contained in Paragraphs 52 and 53 to the extent that they are inconsistent with the express language of Amendment No. 4 taken in its entirety.

28.     Defendants state that the first sentence of Paragraph 40 of the Complaint states a legal conclusion as to which no response is required.  Defendants deny the allegations contained in the remaining sentences of Paragraph 40 of the Complaint.

29.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint except Defendants admit,

upon information and belief, that Manwin or some affiliate of Manwin expressed interest in acquiring all of the shares of the Corporation for $1.50 per share.

30.     Defendants admit the allegations contained in paragraph 42 of the Complaint except Defendants deny that the meeting was requested and arranged by Rothstein.

31.     Defendants deny the allegations contained in paragraph 43 of the Complaint except that, at some point, Rothstein invited Weiner and Nicholas to be nominees for election as directors on a slate proposed by Longkloof.

32.     Defendants deny the allegations contained in Paragraph 44 of the Complaint except Defendants admit that Avondale Partners sent a letter to Longkloof on or about April 6, 2012.

33.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint and aver that the statements attributed to Mr. Goldberg are hearsay.

34.     Defendants deny the allegations contained in Paragraphs 46 and 47 of the Complaint except Defendants admit that, on April 26, 2012, Longkloof submitted a timely Notice of Intention to Nominate Individuals for Election as Directors at the 2012 Annual Meeting of Shareholders of the Corporation (the "Nomination Notice") for the nomination of Defendants Doctorow, Sherrif, Nel and Wall, and deny the allegations of Paragraph 47 to the extent that they are inconsistent with the express language of the Nomination Notice taken in its entirety.

35.     Defendants deny the allegations contained in Paragraph 48 of the Complaint except Defendants admit that, on April 26, 2012, Longkloof and Mile End filed Amendment No. 5 to their Schedule 13D and deny the allegations contained in Paragraph 48 to the extent that

they are inconsistent with the express language of Section 2.17 of the Bylaws in its entirety.

36.     Defendants deny the allegations contained in Paragraph 49 of the Complaint and deny the allegations in Paragraph 49 to the extent that they are inconsistent with the express language of Amendment No. 5 taken in its entirety, and aver that it was appropriate and lawful not to identify Rothstein as the member of any group for purposes of § 13(d) of the Securities Exchange Act of 1934.

37.     Defendants admit the allegations contained in paragraph 50 of the Complaint except Defendants deny knowledge or information sufficient to form a belief as to whether it was a conference call.

38.     Defendants deny the allegations contained in Paragraph 51 of the Complaint except Defendants admit that, on May 23, 2012, Longkloof and Mile End filed Amendment No. 6 to their Schedule 13D and deny the allegations of Paragraph 51 to the extent that they are inconsistent with the express language of Amendment No. 6 taken in its entirety.

39.     Defendants deny the allegations contained in Paragraphs 52 and 53 of the Complaint and deny the allegations contained in Paragraphs 52 and 53 to the extent that they are inconsistent with the express language of Section 2.17 of the Bylaws in its entirety.

40.     Defendants deny the allegations contained in Paragraph 54 of the Complaint.

41.     Defendants deny the allegations contained in Paragraphs 55 through 57 of the Complaint and deny the allegations contained in Paragraphs 55 through 57 to the extent that they are inconsistent with the express language of Section 2.17 of the Bylaws taken in its entirety.

42.     Defendants deny the allegations contained in Paragraph 58 of the Complaint except Defendants admit that Rothstein is a financial advisor to Longkloof.

43.     Defendants deny the allegations contained in Paragraphs 59 and 60 of the

Complaint and deny the allegations contained in Paragraphs 59 and 60 to the extent that they are inconsistent with the express language of Section 2.17 of the Bylaws in its entirety.

44.     Defendants deny the allegations contained in Paragraph 61 of the Complaint and deny the allegations contained in Paragraph 61 to the extent that they are inconsistent with the express language of Section 2.17 of the Bylaws taken in its entirety.

45.     Defendants deny the allegations contained in Paragraph 62 to the extent that they are inconsistent with the express language of Section 2.17 of the Bylaws taken in its entirety.

46.     Defendants deny the allegations contained in Paragraph 63 of the Complaint.

47.     Defendants state that Paragraphs 64 through 68 of the Complaint is in the nature of a legal argument as to which no response is required and, to the extent a response may be required, Defendants deny the allegations contained in Paragraphs 64 through 68 of the Complaint.

48.     With respect to Paragraph 69 of the Complaint, repeats its responses to Paragraphs 1 through 68 of the Complaint.

49.     Defendants state that Paragraphs 70 through 73 of the Complaint are in the nature of a legal argument as to which no response is required.

50.     Defendants deny the allegations contained in Paragraph 74 of the Complaint.

51.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint except aver the Corporation is not entitled to any relief.

52.     With respect to Paragraph 76 of the Complaint, Defendants repeat their responses to Paragraphs 1 through 75 of the Complaint.

53.     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

54.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the Complaint except aver the Corporation is not entitled to any relief.

### First Affirmative Defense

55.     The Corporation, acting through its directors, is acting in bad faith and has unclean hands.

### Second Affirmative Defense

56.     The Corporation is equitably estopped from denying that it had knowledge of the facts that it claims were omitted from the Nominating Notice.

### Third Affirmative Defense

57.     The Corporation has waived any objections to the Nominating Notice.

### COUNTERCLAIMS

Defendants- Counterclaimants Longkloof Limited, Mile End Limited and Eric Doctorow, Mahmood Khalik Ismail Sherrif, Willem Deon Nel, Barbara Wall (collectively, the "Nominee Counterclaimants") for their counterclaim against New Frontier Media Inc. ( the "Corporation" or "NFM") and Alan Isaacman, Walter Timoshenko, Melissa Hubbard, Hiram Woo (the "Director Counterclaim Defendants"),and Michael Weiner and David Nicholas, upon knowledge as to themselves and their own acts, and upon information and belief as to other matters, allege as follows:

### Nature of the Counterclaims

1.     This Counterclaim seeks to preserve the rights of shareholders of NFM to nominate and elect directors of the Corporation. The Director Counterclaim-Defendants have attempted to entrench themselves as directors of the Corporation in order to continue to receive the excessively large directors fees that they are paid. The 2011 proxy materials reported that the

directors were paid annual directors' fees, entirely in cash, ranging from $87,500 to $97,500 in

cash per year.  Director compensation was set at this high level with the commitment that

Directors would invest 50% of what they received in shares of NFM; however, the requirement

that the fees be used to purchase shares of NFM was never enforced and ultimately abandoned.

2.      For compensation purposes, NFM inappropriately compares itself to companies

three to four times its size, companies which are in different businesses and companies which

have been far more successful than NFM.  NFM's stock price declined over the past five years

from above $9.00 per share to a price of $1.13, at the time that Longkloof first  made its offer to

purchase the shares of NFM.  The directors have been paid these lavish fees even though the

Corporation operated at a loss for each of the preceding three years.

3.      In addition to the director fees that he receives, Isaacman's law firm represents

NFM and, historically, has been paid substantial fees in connection with that work.  Institutional

Shareholder Services, Inc. (ISS), an advisory firm for institutional investors with fiduciary

obligations, has advised shareholders to withhold their votes for Isaacman even in uncontested

elections.  At the 2011 annual meeting, shareholders cast 3,548,770 votes for him, and withheld

4,603,313 from him.  Notwithstanding that he lacks the confidence of a majority of  the voting

shareholders, his fellow Directors have chosen him to be the Chairman of the Special

Committee, Chairman of the Nominating Committee and NFM proposes to nominate him for re-

election, unopposed if NFM's Bylaws are applied as NFM advocates in this action.

4.      In contrast to the fees they receive as Directors, the Directors own few shares of

NFM, and many of the Directors own no or only a nominal number of shares.  This creates the

anomalous situation in which the Directors would not benefit as shareholders from even a

generous offer to purchase the Corporation at a substantial premium, but would lose their lucrative sinecure as Directors if NFM were acquired.

5.      To preserve their positions and the lucrative fees they are paid, the Director Counterclaim-Defendants have stone-walled offers to purchase all of the Shares of NFM on terms that are fair to all of NFM's shareholders, have used the Poison Pill to further entrench themselves by deterring fully-financed proposals for the acquisition of NFM on terms that are fair and non-coercive, and have delayed and are likely ultimately to prevent the shareholders of the Corporation from receiving these offers.  To insulate themselves from the shareholders' exercise of their franchise by replacing a majority of the current board, the Director Counterclaim-defendants have perverted Article II, Section 2.17(B)(i) of NFM's Bylaws (the "Advance Notice Bylaw") in order to prevent shareholders from exercising their voting rights in the selection of directors and thereby ultimately prevent the shareholders from receiving any acquirer's offer and making their own decision as to the value of any acquirer's offer.  Because of that, Counterclaimant Longkloof has exercised its rights as a shareholder of NFM and duly nominated Counterclaimants Doctorow, Sherrif, Nel and Wall in order to defeat the roadblock that the Director Counterclaim-defendants have set to prevent any change of control of the Corporation.  While directors of a Colorado corporation are permitted to utilize certain anti-takeover devices to protect shareholders from any unfair or coercive offer, they are not permitted to strip shareholders of their voting rights when they seek to exercise the ultimate remedy of shareholder democracy to replace directors who are not acting in the best interests of shareholders and are frustrating their rights to receive fair and equitable offers to purchase their NFM shares.

### Parties to the Counterclaim

6.     Counterclaimants Doctorow, Sherrif, Nel and Wall have been duly nominated to stand for election as directors of the Corporation at its next annual meeting of shareholders.

7.     Counterclaimants Longkloof and Mile end are shareholders of the Corporation eligible to vote for the election of directors at its next annual meeting of shareholders.

8.     Counterclaim-defendants are New Frontier Media Inc. ( the "Corporation" or "NFM"), and Michael Weiner, Melissa Hubbard, Alan Isaacman, David Nicholas, Hiram J. Woo and Walter Timoshenko (collectively, the "Director Counterclaim-Defendants"), each of whom currently serves as a director of NFM and will stand for re-election as directors of NFM at the next annual meeting of shareholders of the Corporation.  The Nominations Committee of the Board is comprised of Isaacman, its Chair, and Timoshenko, both of whom are standing for re-election at the next annual meeting of NFM shareholders.

## Jurisdiction, Venue and Choice of Law

9.     This Court has jurisdiction over the subject matter of the Counterclaim and venue is properly laid in this District pursuant to Rule 13 of the Federal Rules of Civil Procedure.

10.     NFM is a Colorado corporation.  The duties that a director of a Colorado corporation owes its shareholders and the voting rights of shareholders of a Colorado corporation are defined by Colorado law.

## First Counterclaim
### (Directors' Breach of Fiduciary Duty)

11.     On September 22, 2010, Longkloof and Mile End, as the beneficial owners of shares of NFM (the "Filing Parties"). filed a Schedule 13D with the SEC in which such parties disclosed their collective beneficial ownership of 11.5% of the outstanding shares of NFM.

12.     In or about August 2008, NFM adopted its Amended and Restated Rights Agreement (the "Poison Pill"), which governs the terms of NFM's preferred stock purchase

rights registered under Section 12 of the Exchange Act to extend the expiration date of such

agreement to December 21, 2014.  The Poison Pill restricts an acquirer's ability to purchase

shares in excess of 15% of NFM's stock without triggering the issuance of certain rights to

purchase preferred stock of NFM that is intended to and would result in very substantial

economic and voting dilution of the acquirer's share ownership.  No acquirer can proceed if the

Poison Pill remains in effect.  As a result, unless its exercise is enjoined by a court, the acquirer

can be stymied by the Board's refusal to negotiate in good faith.  The only way to remedy this is

for the shareholders to replace the recalcitrant Board with directors who will discharge their

fiduciary duties and more open-mindedly consider the best interests of all shareholders, and

refrain from placing their personal interests ahead of the interests of shareholders.

13.     On February 24, 2011, the Filing Parties filed Amendment No. 1 to their Schedule

13D to reflect their collective beneficial ownership of 12.1% of the outstanding Shares of NFM

as of such date.

14.     Upon information and belief, in or about October 2011, Steven Gans, a

shareholder of NFM, requested that the Board remove the Poison Pill to enable him to discuss

with other shareholders the possibility of making a proposal to acquire the Corporation, without

the risk of their being deemed to be a "group" holding more than 15% of NFM's shares which

could result in triggering the Poison Pill.  The Board declined to remove the Poison Pill from that

possible acquisition.

15.     Although the Poison Pill was due to expire, on October 31, 2011, in response to

Gans' expression of potential interest in exploring an offer, the Board amended and extended the

Poison Pill.

16.     The Filing Parties filed their Amendment No. 2 to their Schedule 13D on January 17, 2012, under which the Filing Parties disclosed their collective beneficial ownership of 15.7% of the outstanding Shares of NFM as of January 17, 2012.

17.     Commencing in February 2012, Longkloof, through its financial advisor, attempted to contact management and certain directors of the Corporation with an offer to negotiate a consensual proposal by which an affiliate of Longkloof would propose to acquire, for cash in a fully-financed transaction, all of the shares of NFM not beneficially owned by it at a substantial premium to the then trading price of the shares.

18.     At the suggestion of Counterclaim–Defendant Isaacman, on March 9, 2012, Longkloof sent a letter (the "March 9 Letter") to the Board, pursuant to which Longkloof made an offer to acquire all of the outstanding Shares not beneficially owned by Longkloof for $1.35 per Share in cash, subject to the terms and conditions specified in the March 9 Letter (the "March 9 Offer"). The March 9 Offer represented a 26% premium over NFM's average closing stock price from the start of 2012 until February 15, 2012, the date on which the Filing Parties first contacted NFM expressing their interest in an acquisition. The March 9 Offer was not subject to any financing contingency and only subject to limited conditions to closing, including (i) that NFM obtain all necessary corporate and regulatory approvals and refrains from incurring any new or additional "change of control" or similar obligations and (ii) satisfactory due diligence review and the execution of definitive documents. The Filing Parties also expressed in the March 9 Letter that they are prepared to proceed immediately to negotiate and execute definitive documents providing for a merger of NFM with a new acquisition vehicle that they would form. In the March 9 Letter, Longkloof confirmed its commitment to protecting the value of its

investment in NFM and noted that it was prepared to pursue any and all actions available to it in order to ensure that it maximizes shareholder value.

19.     On March 9, 2012, NFM publicly acknowledged receipt of the March 9 Offer from us and disclosed that the Board had formed a Special Committee (the "Special Committee") of purportedly independent directors to review and evaluate the March 9 Offer.  The Special Committee is comprised of Counterclaim-Defendants Isaacman, its chairman, and Tomishenko and Hubbard.  Upon information and belief, Nicholas was initially appointed to the Special Committee but thereafter was either removed or pressured to resign by the other Directors.  In truth and in fact, the Special Committee is not comprised of disinterested directors.

20.     On March 14, 2012, the Filing Parties filed Amendment No. 4 to their Schedule 13D with the SEC in which they disclosed the March 9 Letter as an Exhibit.

21.     On March 23, 2012, Manwin Holding S.a. r.l., another strategic acquiror, submitted an unsolicited, non-binding, conditional acquisition proposal indicating its interest in pursuing the acquisition of all of the outstanding shares of NFM for $1.50 per share in cash, subject to due diligence and other conditions.

22.     On April 3, 2012, NFM announced, in a press release, that the Special Committee had retained Avondale Partners, LLC as its financial advisor to examine and consider a broad range of strategic alternatives.  According to that press release, the strategic review would purportedly evaluate NFM's current long-term business plan against a broad range of alternatives that have the potential to maximize shareholder value.  The press release further noted that the Special Committee, working with its financial and legal advisors, intends to proceed in a timely and orderly manner to consider a broad range of possible strategic alternatives for NFM and their implications, but did not set a definite schedule for the completion of its evaluation.  Upon

information and belief, the Special Committee is predisposed to not selling the Corporation and is likely to exaggerate the prospects of NFM that they have failed to realize through their long tenure as directors in an effort to "Just Say No" to any fully-financed, fair offer.  In a May 2, 2012 press release, Alan L. Isaacman, Chairman of the Special Committee , criticized Counterclaimants' nomination of a competing slate of directors and commented, "It is unfortunate that rather than choosing to engage constructively with the Special Committee's financial advisor, Hosken has chosen to launch a potentially costly and distracting proxy contest."  It is apparent from a long pattern of refusing to engage with Longkloof or other potential acquirers, and from statements such as Isaacman's, that the Director Counterclaim-Defendants have determined that no offer to acquire NFM is adequate because that would end the annuity that they are paying themselves in the form of directors' fees.

23.     Mr. Isaacman's criticism was based upon Counterclaimants' purported refusal to sign a confidentiality agreement that contained a standstill that would have (a) limited Longkloof's ability to take actions that it believes would be in the interests of all shareholders of the Corporation and (b) stymied its publicly stated intention to seek control of the Corporation, either through an acquisition in an all cash transaction representing a substantial premium for all shareholders or a proxy contest for control of the Corporation.

24.     In truth and in fact, Longkloof proposed a confidentiality agreement without the impediments that NFM  included in its proposed confidentiality agreement and, alternatively, offered to participate in NFM's process without having access to NFM's confidential information thus obviating the need for any confidentiality agreement.

25.     Because director approval is necessary to present to shareholders a proposal to merge or acquire the assets of NFM, and to remove the transaction from the application of

NFM's Poison Pill, and because the Director Counterclaimant Directors have refused to negotiate Longkloof's proposal, the only recourse for shareholders is to replace the recalcitrant directors through a proxy contest. Longkloof has proposed a slate of directors that would more open-mindedly consider all proposals and redeem the Poison Pill in order to permit the best offer to be brought directly to NFM's shareholders..

26.     On April 26, 2012, the Filing Parties amended their Schedule 13D to disclose that they  had delivered the Nomination Letter, and included a copy of such Nomination Letter as an exhibit to such amendment. the Filing Parties also reported their beneficial ownership of 15.9% of NFM's outstanding Shares as of April 26, 2012.

27.     On May 23, 2012, Longkloof sent a letter (the "May 23 Letter") to the Board, pursuant to which Longkloof increased its offer to acquire all of the outstanding shares not beneficially owned by Longkloof for $1.75 per share in cash, subject to the terms and conditions specified in the May 23 Letter (the "May 23 Offer").  The May 23 Offer represented a 60% premium over NFM's average closing stock price from the start of 2012 until February 15, 2012, the date on which the Filing Parties first contacted NFM expressing their interest in an acquisition.  In an effort to be completely transparent, Longkloof made its May 23 Offer public. In the May 23 Letter, the Filing Parties reiterated that their "intentions are to acquire New Frontier Media in an all cash transaction representing a substantial premium for all shareholders. To this end, [they] fully support the Special Committee's stated objective of 'acting in the best interests of, and maximizing value for, all shareholders, and are prepared at this time to allow for a 'go shop' period in a definitive agreement.  [They] are also prepared to participate in an auction process to ensure that shareholders receive fully negotiated, full and fair value for their shares, and look forward to receiving the promised bid letter from the Special Committee's financial

advisor.  All [they] ask is that the members of the Special Committee act quickly, exercise their fiduciary duties and live up to their mandate before further shareholder value is destroyed." Similar to the March 9 Offer, the May 23 Offer is not subject to any financing contingency and likely subject to limited conditions to closing, such as (i) the retention of management, the state of the balance sheet, no material adverse change, that NFM obtains all necessary corporate and regulatory approvals and (ii) the execution and delivery of definitive documentation.  In the May 23 Letter, they also urged NFM to refrain from establishing any new or additional "change of control" or similar obligations or otherwise taking actions which further erode shareholder value.

28.     On April 26, 2012, within the time prescribed by the bylaws of NFM, Longkloof delivered to the Secretary of NFM a notice of intention to nominate Doctorow, Sherrif, Nel, and Wall for election as directors at the next annual meeting (the "Nomination Notice").

29.     On April 26, 2012, the Filing Parties amended their Schedule 13D to  add HCI, Sabido, Sherrif, Nel, Wall and Golding as filing parties and disclosed that they had formed a group to solicit proxies or written consents for the election of directors at NFM's next annual meeting.  Amendment No. 5 disclosed that Longkloof had delivered the Nomination Notice, and included a copy of such Nomination Letter as an exhibit to such amendment.  The Filing Parties also reported their beneficial ownership of 15.9% of NFM's outstanding Shares as of April 26, 2012.

30.     From April 26, 2012 until May 31, 2012, NFM did not object to the Nominating Notice.  On May 31, 2012, NFM commenced this action seeking, among other things, a declaration that it could lawfully reject the nominations of Doctorow, Sherrif, Nel and Wall, on the grounds that the Nomination Notice purportedly failed to disclose Rothstein as a member of an alleged "group" including Longkloof, Mile End and the insurgent slate.  The consequence of

this wrongful rejection of the Nominating Notice is to leave the incumbent slate unopposed for re-election as directors and to deny all shareholders of NFM the exercise of their franchise to elect new directors.  Running unopposed, in turn, will enable the Director Counterclaim-Defendants to continue to stonewall and frustrate any effort to have the shareholders of NFM consider a bona fide acquisition proposal and would enable the Director Counterclaim-Defendants to further entrench themselves and continue to collect their excessive cash fees.

31.     By this lawsuit, NFM also asks the Court to strip Longkloof and Mile End, shareholders owning approximately 15% of the equity interest in NFM, of their voting rights in the next annual meeting of shareholders.

32.     In truth and in fact, Rothstein is not a beneficial owner of shares of NFM and does not have voting authority over the shares of any beneficial owner of shares of NFM.  Rothstein is a financial adviser to Longkloof.  That relationship does not make Rothstein a member of any group within the meaning of Rule 13d-1, 17 C.F.R. § 240.13d-1.  That Rothstein is an advisor to Longkloof was acknowledged by NFM in the May 2, 2012 press release.

33.     As directors, Defendants Isaacman, Tomishenko, Hubbard, Woo ,Nicholas and Weiner owe fiduciary duties to the shareholders of NFM.  Motivated by their self-interest to avoid a challenge by insurgents and to avoid having any acquisition of NFM take place, which would disrupt the sinecure of their directorships, the Nominating Committee, the Special Committee and/or the Board breached their fiduciary duties by asserting defective notice when they had actual knowledge and by failing to waive any technical defects to the Nominating Notice, and by causing NFM to bring this suit without any inquiry of Rothstein or any other defendant and without any investigation of Rothstein's true relationship with the Filing Parties.

34.     In addition, the Director Counterclaim-Defendants are manipulating the election process and threatening to deny NFM shareholders their rights to nominate and elect directors in a competitive election.  In so doing, the Director Counterclaim-Defendants are threatening to cause NFM to disenfranchise its shareholders.

35.     Counterclaimants and other shareholders of NFM will suffer irreparable harm if Counterclaimts Sherrif, Nel, Doctorow and Wall are not permitted to stand for election as directors, or if conditions were to change between now and a special meeting of shareholders and Longkloof withdrew its offer, with the substantial premium it is offering to shareholders.

36.     Unless enjoined by this Court, the Director Counterclaim Defendants will wrongfully Defendants deny the Nominee Defendants the opportunity to be considered for election as directors of NFM, and will deny the shareholders of NFM the opportunity to consider an opposition slate of directors committed to allowing the shareholders to decide on the value of an acquisition offer.

37.     Counterclaimants have no adequate remedy at law.

### Second Counterclaim
### (Declaratory Judgment and Equitable Relief)

38.     Counterclaimants repeat and reallege each of the allegations contained in paragraphs 1 through 37 of the Counterclaims.

39.     The only legitimate justification for an advance notice bylaw is to give the corporation adequate time to prepare for a shareholder vote and to prevent floor nominations at a meeting which would deprive shareholders not in attendance of the opportunity to vote.

40.     At all times, NFM has been aware that Rothstein has had a relationship with Longkloof and HCI as part of an effort to acquire shares.  The Complaint itself recounts that directors communicated and met on several occasions with Rothstein with respect to Longkloof's

acquisition proposal.  The Complaint also alleges that Longkloof advised various directors that it may seek to elect new directors.

41.     At all times, NFM has been aware that Longkloof wished to make a proposal to acquire all of the shares of NFM and to take the corporation private.

42.     NFM has had actual knowledge of Rothstein's involvement and of Longkloof's intentions  prior to the date for notice under NFM's bylaws for nominating directors, and is not being taken by some unfair surprise.

43.     It is currently more than three months before the meeting and NFM has yet to file even preliminary proxy materials with the Securities and Exchange Commission.  The Company has had fair and ample notice that (i) Rothstein has a relationship with Longkloof; and (ii) that Longkloof wishes to make a proposal to acquire NFM.

44.     There is currently a ripe and justiciable controversy between Counterclaimants and the Counterclaim Defendants.

45.     Counterclaimants are entitled, pursuant to 28 U.S.C. §§ 2201-02, to a declaratory judgment and equitable relief to prevent Counterclaim Defendants from denying them participation in the 2012 election of directors.

46.     Counterclaimants have no adequate remedy at law.

47.     In the event that the Nominating Notice is found defective in any respect, Counterclaimants should be permitted to correct that Nominating Notice *nunc pro tunc* and be deemed timely in their filing of their nomination of Doctorow, Sherrif, Nel and Wall so that they can be considered for election at the next annual meeting of NFM shareholders.

WHEREFORE, as to Plaintiff's claim, Defendants respectfully request judgment

(a)     Dismissing the Complaint with prejudice;

(b)      Awarding Defendants the costs and disbursements of this action, including reasonable attorneys' fees; and

(c)      Granting Defendants such other and further relief as the Court deems just and proper; and

With respect to the Counterclaims:

(d)      Declaring that Counterclaimants' Nominating Notice is accurate and should be recognized by NFM as a valid and effective nomination of Counterclaimants Doctorow, Sherrif, Nel and Wall for election as directors of NFM at its next annual shareholders meeting; or

(e)      Alternatively, ordering Counterclaim-Defendants to accept Counterclaimants' corrected Nominating Notice *nunc pro tunc* to the date of its initial delivery and permit the Nominee Counter claimants to stand for election at the 2012 annual meeting;

(f)      Preliminarily and permanently enjoining Counterclaim Defendants from taking any action to interfere with NFM's shareholders being able to vote for Counterclaimants Doctorow, Sherrif, Nel and Wall for election as directors of NFM at its next annual shareholders meeting;

(g)      Awarding Defendants the costs and disbursements of this action, including reasonable attorneys' fees; and

(h)     Granting Defendants such other and further relief as the Court deems just and

proper.

Dated: June 8th, 2012

STROOCK & STROOCK & LAVAN LLP

By:     /s/ Bruce Schneider
       Bruce H. Schneider
       Kenneth Pasquale
       (To Be Admitted)
       180 Maiden Lane
       New York, New York 10038
       (212) 806-5400

       -and-

       Thomas P. Johnson
       Jon Bergman
       DAVIS GRAHAM & STUBBS LLP
       1550 Seventeenth Street #500
       Denver, CO 80202
       (303) 892-9400

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **ANSWER AND COUNTERCLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF** was served by **email (attached as a PDF document) and UPS, upon:**

       Brandon R. Williams
       Todd F. Chatham
       Alston & Bird LLP
       One Atlantic Center
       1201 West Peachtree Street
       Atlanta, Georgia 30309-3424
       brandon.williams@alston.com
       todd.chatham@alston.com

       Gidon M. Caine
       Alston & Bird LLP
       275 Middlefield Road
       Suite 150
       Menlo Park, California 94025-4008
       gidon.caine@alston.com

Dated this 8th day of June, 2012.

                        By:        /s/ Bruce Schneider
                                  Bruce H. Schneider